May it please the Court, I represent the plaintiff below CBLR Performance Horses, Inc. The plaintiff brought a RICO cause of action against several defendants, including John Wynne and Rivermont Banking Company. The District Court dismissed the case because it found that, quote, simply because Mr. Wynne may have in the past run Rivermont to serve as alleged racketeering ends, does not necessarily mean that the entity itself, which could be run legitimately, poses a threat to the public or the alleged victims in the instant case, simply by virtue of its continued existence. The District Court wrote that the four victims described in the complaint had already been bilked, so the scheme was over and the complaint did not state a claim meeting RICO's continuity. You agree that open-ended RICO is not an issue anymore in this case, is that right? Pardon, that closed-ended? We contend that the complaint stated a claim of open-ended continuity. I'm sorry, I meant closed-end is out, right? Yes, sir, that is a strawman, that is not an issue in this case. I'll first address why this Court should reverse the District Court's dismissal of the first amended complaint, which the plaintiff contends stated sufficient facts to support open-ended continuity. What facts does it state to support open-ended continuity? Well, Your Honor, the complaint states that Mr. Wynne operated Rivermont Banking Company as an illegal banking company. He wasn't allowed to operate it as a banking company. At the time the complaint was filed, he was continuing to operate it. He was advertising it as a banking entity. Not as a bank, but consultants. It was doing a banking business. But you assert that somehow, this is how I see it. Yes, sir. Your claim is it's open-ended because somehow the banking operation had been involved in his scheme that people were taking advantage of because of that involvement of that banking operation generally in the scheme and that that entity continues now as a banking operation. Yes, sir. Is that it? That's it. It continues now as a banking operation. And so the district court narrowed it by saying that there were four victims in the complaint and that the activity relating to those four victims has ended essentially because those people have been billed. I want to go beyond that, though. I want to go beyond that. Yes, sir. Because even taking your position would be right on what the court said. I still want to see if those three factors that I've stated, as you've stated them or alleged them, if that's enough to get you to open-ended continuity. How do you assert that the so-called improper banking operation, how do you assert? Now, just tell me now, how did you assert in your complaint that was part of the scheme? You say things like this. He was a retired banker. Well, I don't think that brings anything into play. No, it doesn't. You say somewhere you sort of make, I didn't see it in the complaint as much as you make it in your argument, that because these victims, the victims of his scheme thought he was a banker, he lured them into his sort of operation. Where does that come from in the specific allegations in the complaint? You understand my question? Yes, sir. The complaint is quite lengthy. Oh, no, no. I didn't say it's not lengthy. Yes, sir. I said where is it in there. Right. And RICO, of course, has many wickets that one has to maneuver through to state or to even plead a RICO complaint. Just let me say this. Yes, sir. I see a lot of predicate acts where you're talking about banking and the banking fraud, but as I read that, that's almost exclusively banking fraud that he committed on another bank. That's where the bank is involved in that fraud. It seems to me that the strong case for continuity would be you allege that he had a scheme whereby his purported to be a banker and being involved in banking activity was essential to getting victims in, and now that same kind of activity continues. Do you allege that, that first part, that it was the nature of his so-called improper banking operations that actually lured victims in? That's a good question. And looking at it now, the language could be stronger. And I think that the court, this court has addressed a similar situation, and that's why I'm not using this as an excuse, but the jurisprudence on RICO requires many wickets to be maneuvered through. And so when writing the complaint, you know, I focused on many of those things that I thought were difficulties in the case. And so I wrote this complaint, which is quite lengthy, and it met all of the wickets except continuity. Now, in this court's case of Manasco versus Wasserman, the court looked at a complaint which did not pass muster because it only alleged that two doctors, maybe three doctors, had been defrauded by an attorney who was running a scheme. But after the motion to dismiss had been granted by the district court, the plaintiffs said that they could plead that there were 25 other people that were involved in the scheme. And so this court said that the original complaint did not meet the standards of RICO, but since they could plead those additional 25 people, that would be sufficient. And so they ought to be allowed to amend their complaint. Well, you were allowed to amend your complaint, weren't you? Did you amend your complaint? Yes, sir. We did amend the complaint. Well, I'm looking at the amended complaint. I still have the same question, though. Yes, sir. And if the problem is that the length and we're looking at paragraph 156, or I mean, I would direct the court's attention to paragraph 156D of the complaint, which is on page 57 of the appendix. The continuity language says Rivermont continues to advertise it. And there's a there's a label that says when scheme is continuous and recites facts that I know exactly there. That's right. But 156, you would go there. Yes, sir. Rivermont continues to advertise itself on the Internet as a bank, providing mortgage loans, construction loans and reverse mortgages. And what I could have put there with the facts that are pleaded here, what I could have put there as a comma and said, and when operates, this continues to operate this illegal bank as a as a spider operates his web, luring new victims into this scheme by continuing to advertise itself on the Internet as a bank. Well, first of all, that might solve the second problem. But you did amend your complaint and you're saying you could have done it. Why are we to make of the fact that you say you could have, but you did? Well, this the issue of continuity was never raised in the motions to dismiss or an oral argument. So continuity was not an issue that was litigated below until the district court issued its opinion, saying that it met all of the other standards, all the things that we did argue about in the motions to dismiss and on oral argument. It met all those things. It just didn't meet continuity. All right. Let me ask this. Where is it in the earlier discussion in the complaint as to how the bank was used in the operation? I look at I looked at paragraph 158, which is just right below there. And it says when targeted women in financial distress, comma, who thought he was a banker and who believed he was helping them. Well, that that could all be true, but it wouldn't. I don't know that it establishes that the bank part of it was part of the scheme. Yes, sir. The US. Yes, sir. And but I'm a little bit. I may not understand one part of it. I'm saying you have to you have. It seems to me that you somehow if the continuity is based on that bank banking operation is still in effect. That's the basis for you to leave continuity in it. Well, I think you're I think that you may be placing too much emphasis on the bank part. In order to be in order to be in order to buy or to violate Rico, you know, he has to have committed a number of predicate acts. I know that those predicate acts don't necessarily all have to be related to banking. I know that. But the problem is for the scheme to continue on. If you're not careful, there's not some connection and some continuity. It just makes a series of unrelated acts by a bad guy. Rico claim, which that's not the law. Yes, sir. I don't think that's it. And I think that I know that we agree on that. You have to tell me how I get from your complaint. It seems to me the complaint should allow us to reasonably read it. The district court didn't see it. You had to amend your complaint to try to establish, I think. And now some other judges are looking at it. I'm having difficulty seeing it. It seems to me that there was an allegation that he used a purported banking operation to lure. It said this specifically to to attract his victims. And then you go on all the way through it. And here are four of the victims. But he continues to use that banking operation as sort of the attraction that that that makes a pretty strong stand for continuity. But I just don't see that in the complaint. Yes, sir. And the first thing I want to address is the amendment of the complaint. Again, we amended the complaint to address other issues. Continuity was never raised. So this is the first time we're addressing continuity and we're prepared to raise it now if given an opportunity to address continuity. He does not necessarily. And the complaint says this. I mean, these facts are pleaded in the complaint. We have taken a lot of your time. If you want to focus on something, if you go ahead and make some other strong points, if you want. Oh, no, sir. This is I appreciate the question because it's a good segue into what I do need to say. The the complaint states sufficient facts to establish that he has this thing that he holds out as a bank. And so people would reasonably go to him because they think it's a bank. Once they get to him, then he gets into their financial affairs and then he sees different types of opportunities to exploit them. They're not all necessarily frauds on other banks or they're not necessarily. I mean, for example, using insurance policies that has nothing to do with the bank. But as long as he sees an opportunity to exploit the person who he's drawn into his Web, who comes into the Web because it's a bank, then he exploits those people. He gets money from one person. He ties that into X into an opportunity for another victim. And so in that way, it becomes essentially a Ponzi scheme and that Ponzi scheme continues. So that's the continuity. Now, that's why the additional facts that we found. And it's just a coincidence, although this all of this stuff was happening on a relatively quick basis. But we found additional facts that sort of flesh this out a little bit more that made the Ponzi scheme aspect of this clearer. That, for example, he got money from Wachovia Bank, a large amount of money in one instance. And then he was able to roll that money in to getting a loan to buy property that that exploited another victim. And so we there's no reason for us to believe that that isn't continuing. It's just that because we're at the motion to dismiss stage, we haven't been able to conduct enough discovery to find out what else is going on with this scheme. But clearly, there's something going on because he continues to operate it. And we have already four completely unrelated victims. And this is precisely the kind of thing that Rico was designed to to address in this court's jurisprudence. It's used it uses a number of metaphors that, you know, I understand it may be difficult to define it. But words like heartland or words like garden variety. And it seems like what the court is really saying in those cases is that if there is a state law remedy for the wrong that the person is committing, then we don't need to get into federal Rico. But in this case, there is not a Virginia remedy for this kind of scheme. The only similar the only similar type statute is what's called the Virginia Rico case. But it's called the but it's a Virginia Rico statute, which is really entitled the Virginia Business Conspiracy Act. And that requires proof of a conspiracy. This is a scheme that meets all of the Rico criteria. But it is not a conspiracy. What it is is a person operating an enterprise in a in an illegal manner. But you have you have other state law claims. Yes, sir. We do. But what happens to those claims if you lose here? Can you can you go back and file those those in state court or is it too late to do that? No, sir. We can do that. And we have done that, except none of those will provide the remedy that Rico provides of stopping the scheme. Right now, this man continues to operate the scheme. You get a big judgment against him in state court. That's probably going to. Well, we can't get on his line and we can't get an injunction to stop his business. There isn't a state law that allows that remedy. And so that's would be stopping the scheme. And then it's it's possible that we could get damages as big under that conspiracy act. But it would require a conspiracy. And these facts really mean the facts here may not rise to a conspiracy. The Rico scheme is a person operating an enterprise. That's what Rico is designed to address. So the federal Rico act is the appropriate remedy for the scheme that this man's operating. Now, I think just to forecast it, I think that the defendant is or the appellate Lee is going to say that they don't do this business anymore. That's a question of fact. We've alleged he does continue to do this business. If I have any time left, I would like to reserve that. OK, thank you. Thank you. Mr. Mooney. May it please the court. My name is Chad Mooney. I'm here with John Falcone of Petty Livingston, Dawson and Richards in Lynchburg, Virginia. We represent John Wynn, 1650 Partners LLC and Rivermont Consultancy. The primary issue on this appeal is that the plaintiffs failed to allege a pattern of racketeering activity in the amended complaint. We are here because on the continuity prong on on the on the Rico acts that Congress has set forth. And to establish a Rico case, the plaintiff must show that the racketeering predicates are related and they amount to or pose a threat of continued criminal activity. Well, why would if you take it for a second, which you may argue with, if you take it that this amended complaint asserts this, that he was operating some kind of banking, some operation held out to be a bank which lured his victims. He has those named victims and he continues in some form to operate that banking operation. Why isn't that continuity? Well, there's two ways that you can prove open into continuity. As the Supreme Court stated, it can either involve a distinct threat of long term racketeering activity. Or is it is it a part of an ongoing entities regular way of doing business? It sounds like it could be both. It could be both. But the point doesn't establish either one. No, no, no. I'm saying those allegations establish both. It seems like he had an operation using an entity that he said was a bank or was a bank to lure his victims in. Then he took advantage of them and defrauded, made them part of his scheme because of that banking operation. That was part of how he got people in or what he used as part of it. And he has defrauded people, at least four, three or four victims. And he continues to do it. I think that's a little bit of an embellishment of the allegations that are in the complaint. No, no. You know what I said was I said that the allegations say that if the allegations say just what I said, would that be continuity? Well, I don't think that. What do you have to tell me? Would that be continuity or not? As the allegations, as I just said, I'm in my hypothetical. I don't think I don't think so. But why not? Because if you if you are operating a legitimate business, there is no. This is the alley. This is the allegation. The allegation is that he uses this thing he holds out to be a bank. This is my, my, my, my hypothetical. I'm trying to read it the way he said to you. I'm not sure he's entitled to that. But if it is read that he had some kind of banking operation, which banking operation was part of his scheme to lure people in to then take advantage of them. We have known victims and he continues to operate that banking enterprise in that way. But why? Why isn't that enough? I don't think there's that specific threat of continuing racketeering. I just said he continues to operate that banking operation in that way. That was the allegation. That wouldn't be enough. Well, I don't think so. Under that, under that hypothetical, because I don't I don't understand what the predicate acts are. Fraud. The fraud. He defrauded people. That's predicate acts. This is my question. Doesn't go to predicate acts. Take it as a given in my hypothetical. They're there. I'm asking about continuity. Well, if he if he can establish open if that doesn't have to establish it, he is alleging it. I'm asking you under the complaint, as I've said, it reads. Now, let me say this clearly. You can argue that it doesn't say that. And maybe it doesn't. But I'm saying it. I'll say it one more time. If these are the allegations, a person is operating something that appears to be a bank and he's operating that for the purposes of learning victims to then take advantage of them. And he's done that to at least three or four people. So identified. And he continues to operate that banking operation. Why isn't that continuity? Why isn't that allegation enough for continuity? I would agree that that is open in the continuity. Provide provide with one caveat, though, provide provided that they can establish that there is that ongoing threat of criminal activity. But he's but this is the complaint. Yes, but he'd have to establish that at trial, wouldn't he? Well, but you can't you don't you don't get that caveat. I don't think I said with my allegations, make an allegation sufficient of continuity. Would that or would it not? Well, I guess under your hypothetical, it would. But I just don't think that's what's been established. OK, fine. I think that's perfectly fine. I think that's a perfectly fine position. Now, tell me why this complaint, the minute complaint doesn't do what I just asserted. And by the way, you may have a valid argument. I want you to explain that to me. Well, there's there's there's two reasons that there's no specific threat of indefinite criminal activity. And what about this? He continues to advertise itself as a bank. I think that I think that statement is clearly misleading in the complaint. If you if you look at the actual allegation, it says that Rivermont continues to advertise itself on the on the Internet as a as a bank, comma, providing, quote, mortgage loans, common construction loans, comma, and reverse mortgages. He's not alleging. Well, it appears now that he is alleging that Rivermont was operating as a bank. But the name of the company is Rivermont Consultants, Inc. It's a legitimate operation simply because one provides financial services. Any one of your honors. Isn't there a big difference between a situation, say, where there's a gambling syndicate that's running an interstate gambling operation and not buying their gambling stamps and all this stuff? And or maybe a Colombian drug cartel, it's importing drugs over a long period of time into the United States. There's no question about continuity in those. I see a difference between situations like that and the situation here, which taking the allegations of the complaint. As true seem to me, just like a series of incidents where gas being a scoundrel like like beads on a string. Doesn't that make your case different from what the Rico act is designed to deal with? I think you're I think you're you're exactly right. There is not that threat of ongoing criminal activity. The purpose of Rico is to stifle long term criminal conduct. And here we don't know whether Mr. Wynn is going to try to find another lady to be a victim or not. That's correct. Yeah. But a drug cartel can stop selling drugs tomorrow and in the end, the gambling syndicate can stop doing what it's doing tomorrow, too. Can it? Yeah, that's correct. So there's no distinction there. But there is a distinction because there that is part of the entity's regular way of doing business. The allegation that I gave you in my hypothetical is exactly the same thing. He uses the bank, the purported banking operation to lure his victims and he's continuing to hold it out as a bank. Now, well, I don't think the complaint says that. I know that. But in my hypotheticals, is my hypothetical any different? My hypothetical any different than a drug cartel? It isn't scope and maybe danger to the world, but not on continuity, is it? I don't believe so. OK, so we got to go back to whether or not specifically the hypothetical that I gave you that these allegations may be. That's really founded in the complaint, right? Yes. OK. And I don't know that if it is or not. That's what I'm asking you. Tell me why you think the hypothetical, as I proposed, is not supported by these actual allegations. Well, because the the the actual allegations in the complaint, there's there's really four allegations on page fifty six and fifty seven of the joint appendix that point to the actions that serve as the basis for the continuity prong. Let me just say this much. I think you're absolutely right. If you focus on those three, I do. That seems to me that does not establish continuity. That's just the consequences of a completed action, basically. Yes. So then we have then we really are only left with advertising on the bank as the Internet. And any one of your honors can. I mean, simply because someone is providing financial services that in and of itself does not make it illegal. Oh, no, no, no. I don't I don't think that's the issue. The issue is, is that statement exactly right? Just because you could say he is a pro sports agent. So why does it make a difference? Maybe I'm not making myself clear. I'm saying looking at D and I happen to agree with the way I read it. You have to look at D. Continuity is there is because of D. And to me, you have to look at D in light of what else is there in the complaint, anywhere in the complaint that would let you know that the banking operation, whatever we call that entity, was somehow involved in the scheme. You know, I see this is what I can find. He's a retired banker. They say that. I don't know that that makes anything. But they do indicate maybe on the truck. You remember the deal about the truck that they use the truck? He used to bank the title of the truck. So at least that there's a bank is being used. But is there any whatever the allegation that you can see is there in there about banking in the first part, you know, before we get to A, B and C. Does that make sense to you? Yes. I don't I don't see. I don't see any other allegations. That's that's why we take issue with allowing a Rico Rico action to go forward. I mean, it's based on pure speculation that when or a river might to go out and harm this hypothetical group of women. I mean, the D.C. No, no, no. It wouldn't be hypothetical. It would be based on whether or not it stated and alleged that the bank was part of the scheme to harm them. Now, there's nothing there's nothing. There's nothing. There's nothing in the complaint that says that is a regular way that the bank has done its business. And you think I don't think it's in this specifically. And you think there's nothing in the allegations from which we could reasonably infer that was his scheme of businesses or that his business was even used regularly. But wouldn't his let me ask you this. But wasn't his bank using at least a couple of those defrauding incidents simply simply because it was used? It may have been. But I'm asking the question first. Isn't it alleged that the bank was somehow used in in defrauding people? Well, that may not be sufficient. I'm just asking if that's true. I do take issue with the fact that being called a bank because it is Rivermont Consultants, Inc. And I'm talking about earlier. Wasn't it a bank called a bank earlier prior to the suit being filed? What about when he took the title to the truck? Was that consultant a bank? I am not sure as the timing when the well, then I don't know if you ought to take coverage of the fact that I called it a bank because I could be mistaken. Yes, but I think it was a bank at that point. I could be wrong, but I don't I'm not making the point. It was this. And that's why I've danced around what to call it. I call it a banking operation. I don't know what to call her, but it is clear to me the other side is trying to assert whether or not they've done it. I don't know. They're trying to assert that how we did business before. He's still doing it now, whether you call it a is charted as a bank or not charted as the bank. I'm not trying to argue with you about those points, but I'm just saying it. I read it closely as I could. I'm sure all the judges did. I was trying to find out how is this so-called asserted continued bank operation? How was that exactly? What am I to make of that on the front end of all this? That's what I'm trying to say. Even if it happened on on the front end, that does not really go to ongoing continuity. No, I think you might be in trouble on that point because if you take that D paragraph to be read as and he's continuing some kind of banking operation, that might give you a reasonable inference that if he was using the banking operation to defraud, he's continuing it. The inference is to continue his scheme. And maybe that might be something you could defend and show evidence that he's not doing anything like that anymore. But I want to win that shift from from an inference to get you over dismissal to getting maybe dismissed later for judgment as a matter of law. Well, I guess you would also have to infer that that's just the regular way of doing its entire business. And you wouldn't just and you would infer that if it's a reasonable inference. I think it would be based on the allegations in the first part of the complaint about how he set his own scheme up. Well, simply like again, I know that your honor may disagree with me on this point, but simply because you have done that in the past does not mean that that operation cannot be run as a as a legitimate enterprise. And and he can still provide consulting services and make loans as a well within his his rights as a company in Virginia. That does not make it make it illegal simply because a couple of or a few victims. But it's not a question of what the question is, not whether or not he could do it legally or illegally. The question is whether or not by stating that he continues to operate something as a bank, if based on the rest of the allegations of the complaint read together, that's a reasonable inference. A reasonable inference could be not has to be he's continuing the operation of a scheme. That's the question is a very fine point, don't you think? Yes, but I don't think you just think there's not enough inference from the rest of the complaint to support that sort of hypothetical that I gave. I agree. OK. The so I think the court is well aware that that that we take issue that this is based on pure speculation, that there is not a specific threat of ongoing racketeering activity. And I think that the court has stated in a number of cases that it has to be far more than hypothetical possibility of further predicate acts. That was the D.C. Court of Appeals. This court in the U.S. Airline Pilots Association versus a WAPA said that they must allege facts that give rise to a reasonable expectation that the racketeering activity will extend indefinitely to the future. I think that the plaintiffs have failed to set forth sufficient facts to. By the way, let me just say this to you on page 14 or 27 of the amendment of the complaint. Just for what it's worth, that paragraph fifty five said when had the took the truck titled in the name of the Rivermont Banking Company? I stand corrected. You may continue. The the the last part of this appeal, it focuses on the denial of reopening the case pursuant to a rule 60 B2 motion. That was where the CBLR had moved to reopen the case based on newly discovered evidence and fraud. The new facts was that Wells Fargo instituted foreclosure proceedings on the Marsh property and that when did not loan foster money. The trial court rejected that motion because the newly discovered evidence could have been uncovered with reasonable diligence. The evidence would not materially change the allegations. And lastly, the evidence did not help CVR overcome its failure to allege open ended continuity. Basically, the reason that the plaintiff could not demonstrate the motion or could not satisfy its burden on the motion is because it did not explain or offer any evidence. Why it could not have uncovered that particular evidence with reasonable diligence. It simply offered no evidence, did not explain the steps and on a pure procedural matter, it could not satisfy its burden. And therefore, the trial court was correct and the motion on that grounds. The the last grounds was that the new allegations did not materially change the substance or the nature of the complaint, simply because the property was foreclosed on by Wells Fargo, the Marsh property. And the fact that when may or may not have loan misfoster money. Those facts are simply cumulative of what was already in the or in the amended complaint. Those additional facts mirrored upon and expounded upon what was already there. So it really wasn't material as to whether. The plaintiff had had been able to establish when did you first raise a lack of continuity in front of the district court in a motion or how did you do that? I think as part of the appendix, there's a motion to dismiss or failure to state a claim. I think that I think it was alleged more generally. Did you specifically did you have? I remember it's not required. Did you go on the court and have a hearing in front of him? Or was it done on papers? There was there was a hearing before the trial court in either. I could find this out, but I'm asking if you can remember either your filing for a motion to dismiss or in that hearing. Did you talk about did you talk about continuity at all? Did anybody talk about? Well, I'm not sure because of our we were we did not represent Mr. Wynn at that time. So I would I would have to go back and refer. So you don't know. I don't know. But and I would have to speculate. Getting to the last point is that we think that the trial court correctly denied the 12th of the 60 B2 motion because the new additional evidence would not have materially affected the outcome of the trial court's denial of the motion. And I have nothing further on. Thank you. Thank you. Mr. Bowman. Well, Your Honor, with limited time, let me address the issues in turn. Continuity raised before at page 72 of the appendix is the motions dismissed. The amended complaint says nothing about continuity. I did represent the plaintiff below and continuity was not raised at any time before it was raised in the in the the the order dismissing the case, the memorandum of opinion. Bowman, shouldn't the court be real careful about expanding a statute like this with the with the severe, rather severe remedies and the danger of of putting a damper on economic activity and so forth? And it's my understanding that the civil RICO statute and its criminal counterpart were really designed to address organized crime. And Mr. Wynn is not the godfather. He's his crimes by disorganized crime rather than organized crime. And shouldn't shouldn't we have in mind what the statute is really supposed to deal with when we consider whether you ought to be in court on this? That's really what this case is about. That's exactly what this case is about. If you look at your cases on continuity, this court's cases on continuity, they don't get at that issue. What they talk about are metaphors, heartlands, garden varieties, things that are not instructive to somebody like me trying to write a complaint. If you think that RICO is not designed to address this type of thing, then I would urge the court to please say it. But right now the court hasn't said it. The only concrete case out there is H.J. Inc. versus Northwestern Bell Telephone, the Supreme Court's case, and it uses the hoodlum example. And it says a hoodlum who breaks windows for protection money violates RICO. This guy breaks windows for protection money. What he does, he gets he threatens to foreclose on people's property after he, you know, through fraud gets deeds of trust on their property. Has there been any suggestion that RICO is limited to the mafia in the last 50, 40 years? No, sir. Of course not. Now, and Judge Moon raised this issue just as Judge Faber raises it here. And I've had other judges in other cases raise it before. And of course, that's what is in the judge's mind when they dismiss these cases. But if that's what you think, then say it. But that is not what the courts say. And right now for me with a client, the client comes in with a claim. It looks to me like this is squarely within RICO. Do you know of any law in the last 25 years that puts a mandate of some kind of requirement that it be organized crime in the sense we're talking about traditional organized crime? No, sir. Has that been a requirement of RICO? The complaint about RICO has been that it's almost unlimited, isn't it? Yes, sir, exactly. And what has happened is that the court has narrowed. By the way, let me say, I'm not saying whether that's right or wrong from the get-go. Sure. But it seems to me that battle was decided a long time ago. And as a matter of fact, I will say I know the person who drafted the statute, Bob Blakey. And they will tell you, and he's testified all over the country, and I've seen it in cases, it's to be read as broadly as it possibly can. Now whether or not we follow that advice is another question. But it's not, it was, you know, it was career-influenced racketeering operation. It was maybe drafted in the sense somebody had in their mind at some point of going after really what we call the mafia, which now would be drug gangs and stuff. But I just don't think there's been any decision to say it's any way limited like that in decades. No, sir, there is not. If you look at your court's cases on continuity, which is the only issue on appeal here, the continuity cases are essentially meaningless. Now, this case does state a claim of continuity if you accept that he will continue to do it because he did it in the past and he continues to try and advertise doing it. Of course, it's true he could stop. But the mafia could stop. A drug cartel could stop. There's no reason to think he will stop because he's running a Ponzi scheme. And the nature of those schemes is that they have to be continuous. He continues to advertise. Now, there is an issue of whether he can operate as a bank legally. He certainly couldn't call himself a bank. Okay, under Virginia code 6. I don't even think that's a critical issue. To me, the more critical issue, and I'm going to go back to the way we're standing right now, this is just to me now, is just because a person happens to be a banker or just because a person works at a bank or owns a bank, it seems to me that's not enough. It isn't. To tie it into any kind of coverage for RICO because you're looking at basically, I'm going to say it this way, some kind of enterprise that's going on that takes advantage of people and going to continue to go on. That's what the drug conspiracy and the gambling conspiracy and a conspiracy that you can allege in this type of situation have in common. But the question is, time is expiring, but I do want to answer this question for me. What is the single strongest assertion you have in your complaint that would let us reasonably infer that the bank was involved in, part of, essential to the artifice, to the enterprise? Yes, sir. What is it? What allegation? Predicate Act 3, the purchase of the truck. What page are you on? Uh. Uh, appendix page 44. Predicate Act 3. If you look at paragraph 128B, it involves Rivermont. Predicate Act 4, which is an appendix page 49. Paragraph 135A, B, involve Rivermont. And then in, so those, those specifically involve Rivermont. And then in the evidence that we raised in the Rule 60B motion, when Ms. Marsh came in, she said that when Marsh got, when Wynn got the ball rolling with her, he went to a bank in Abingdon and got the bank in Abingdon to loan her $60,000, which he used to pay off all of her debts so that Wynn could borrow basically a half million dollars from Wachovia in a straw man loan. And the only reason why the Abingdon bank made the loan was they wrote on the, the loan papers that was under the influence of Rivermont Bank because Rivermont bought a $60,000 CD from them that day. Okay, so, so those are three things that just clearly involve just the bank. Okay. Thank you. Thank you very much. Yes, sir. I'll ask the clerk to adjourn court and then we'll come down and greet the council. This honorable court stands adjourned until tomorrow morning at 8.30. God save the United States and this honorable court.
judges: William B. Traxler Jr., Dennis W. Shedd, David A. Faber